THE HON. WILLIAM L. HOLLOWAY,
THE HON. JOHN HURLY,
THE HON. JOHN A. MATTHEWS,  } Associate Justices.
THE HON. CHARLES H. COOPER,

---

HALL, ADMX., RESPONDENT, v. NORTHERN PACIFIC
RY. CO. ET AL., APPELLANTS.

(No. 4,386.)

(Submitted November 10, 1919. Decided December 8, 1919.)

[186 Pac. 340.]

*Railroads—Master and Servant—Action for Death—Employ-*
*ers' Liability Act — Contributory Negligence—Nonsuit—Ex-*
*cessive Verdicts.*

Trial Practice—Nonsuit—Denial—Effect of Defendant's Introduction of
 Evidence.
 1.   Where, after denial of a motion for nonsuit, defendant proceeds
 to introduce evidence and thus supplies omissions in plaintiff's case,

(537)

such evidence will, on motion for new trial or on appeal, be considered as introduced by plaintiff in the first place and held to support the verdict in his favor.

Personal Injuries—Railroads—Master and Servant—Proximate Cause—Evidence—Jury Question.

2. Where plaintiff's case, which left in doubt the cause of the collision resulting in the death of her intestate, was aided by defendant's evidence to an extent justifying the inference that it was more naturally to be attributed to the negligence alleged in the complaint than to any other cause, a *prima facie* case was made for determination by the jury.

Same—Employers' Liability Act—Contributory Negligence—No Bar to Recovery.

3. Under section 2 of the Employers' Liability Act (Laws 1911, Chap. 29), contributory negligence on the part of a railroad employee does not bar his right to recover damages for injuries received during the course of his employment; the jury, in such case, being required to diminish the damages "in proportion to the amount of negligence attributable to such employee."

Same—Excessive Verdict—When not Cause for New Trial.

4. Where the jury have made an award greater than the evidence justifies from any point of view, the defendant is entitled to a new trial on the ground that they were influenced by passion or prejudice, unless it is apparent that the amount is the result of miscalculation, in which case the verdict will be reduced to an amount deemed just.

Same—Excessive Verdict—Reduction of Amount.

5. *Held,* that an award for $25,000 for the death of a locomotive engineer, thirty-five years of age at the time of the accident, was excessive, under an instruction "that the award of damages would be such an amount as, being paid now, would be the present worth of what plaintiff would have reasonably received from the deceased as pecuniary benefits had he lived," his monthly earnings averaging $150, and his yearly contributions for rent, food and clothing, $850; his expectancy of life being thirty-two years; verdict scaled to $15,000.

[As to what is excessive verdict in action for death by wrongful act, see notes in 18 Ann. Cas. 1209; Ann. Cas. 1915C, 449.]

*Appeals from District Court of Silver Bow County; Edwin M. Lamb, Judge.*

ACTION by Victoria Hall, as administratrix of the estate of Albert Hall, deceased, against the Northern Pacific Railway Company and W. H. Nokes. Verdict and judgment for plaintiff for $25,000. Defendants appeal from it and an order denying their motion for a new trial. Remanded, with directions to grant new trial unless plaintiff agree to reduction of verdict to $15,000.

*Messrs. Walker & Walker* and *Messrs. Gunn, Rasch & Hall,* for Appellants, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

Defendants moved for a directed verdict, on the ground that the evidence leaves it wholly a matter of conjecture as to what was the proximate cause of the collision. When the evidence leaves it doubtful as to whether the injury may not, with propriety, be attributed to one or more causes other than that alleged, or where it has an equal or stronger tendency to support some other theory, inconsistent with the one upon which plaintiff relies, the burden of proof resting upon plaintiff has not been satisfied, and the plaintiff cannot recover. This rule has been repeatedly announced and applied by this court. (*McGowan* v. *Nelson,* 36 Mont. 67, 92 Pac. 40; *Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515; *Winnicott* v. *Orman,* 39 Mont. 339, 102 Pac. 570; *Fusselman* v. *Yellowstone Valley Land & I. Co.,* 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473; *Andree* v. *Anaconda Copper Min. Co.,* 47 Mont. 554, 133 Pac. 1090; *Scheytt* v. *Gallatin Valley Milling Co.,* 54 Mont. 565, 172 Pac. 321.)

A verdict of $25,000 is clearly excessive,—in fact, any sum in excess of $12,000 is excessive, under the evidence and instructions of the court. The amount awarded is so excessive that it shows prejudice and passion on the part of the jury, which alone warrants the granting of a new trial. (*De Celles* v. *Casey,* 48 Mont. 568, 139 Pac. 586; *Chenoweth* v. *Great Northern Ry. Co.,* 50 Mont. 481, 148 Pac. 330.)

Hall's contributory negligence was greater than any negligence shown on the part of the defendants, but the jury disregarded instruction No. 7–D and made no deduction therefor. (See *Yazoo etc. R. Co.* v. *Williams* (Miss.), 74 South. 835, 836; *Cain* v. *Southern Ry. Co.,* 199 Fed. 211; *Anest* v. *Columbia & P. S. R. Co.,* 89 Wash. 609, 154 Pac. 1100; *Atlantic Coast Line Ry.* v. *Hobbs,* 71 Fla. 109, 70 South. 939; *Dowell* v. *Wabash R. Co.* (Mo. App.), 190 S. W. 939; *Atlantic Coast Line Ry. Co.*

v. *Weir,* 63 Fla. 69, 74, Ann. Cas. 1914A, 126, 41 L. R. A. (n. s.) 307, 58 South. 641, and *Sea Board Air Line Ry.* v. *Tilghman,* 237 U. S. 499, 59 L. Ed. 1069, 35 Sup. Ct. Rep. 653 [see, also, Rose's U. S. Notes].)

*Messrs. Miller, O'Connor & Miller* and *Messrs. Frank & Gaines,* for Respondent, submitted a brief; *Mr. R. F. Gaines* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to recover damages for the death of Albert Hall, a locomotive engineer, who was fatally injured in a collision in the yards of the East Butte Mining Company at Butte, Montana, on April 6, 1916. The yards are situated a short distance southeast of the city and are inclosed by a board fence. A side-track of the defendant railway company, called the lead-track, in the yards, enters them at a gate at the northwest corner and extends a distance of about 1,700 feet toward the east to what is designated in the record as the Bullwhacker loading platforms. From the gate it proceeds on a curve, first to the southeast, and then back to the northeast, to a distance of about 600 feet. It then extends in a nearly direct line to the east about 900 feet. It then turns again to the southeast to the loading platforms. Several spurs branch off from the lead-track to the southeast. The first leaves it just before it reaches the gate leading into the inclosure. The switch is about fifty feet to the west of the gate. After the spur has diverged far enough to afford clearance for passage on the lead, which it does at a distance of less than 100 feet from the gate, it separates into four branches, the two nearest to the lead being designated in order from the north as the concentrator-track and the scale-track. About 1,100 feet from the gate, a spur designated as track No. 6 branches off to the southeast. Beyond this, and at a distance of 1,500 feet, is another spur designated as track No. 7. This is nearly parallel

with the lead and extends to and beyond the loading platforms. The main office building of the mining company is situated on the north side of the lead-track, the west end of the building being 450 feet from the gate. The lead-track ascends to the east on a heavy grade, which begins at the gate at 1.17 per cent. Thence, it gradually increases to 3.16 per cent at a point east of the office building about 1,000 feet from the gate. From this point it is irregular, being 3.01 per cent at a distance of 1,300 feet from the gate, and gradually decreasing to 1.63 per cent at the loading platforms. The several spurs are used for the distribution or storing of empty or loaded cars as occasion or the convenience of the mining company requires. At the time of the accident, Albert Hall was in the employ of the railway company. With a switch crew consisting of Nokes, Park and Finnegan,—Nokes being foreman and having under his control the switching operations,—he took engine No. 65 from the roundhouse of the railway company, and entering the yards proceeded east to get a string of cars standing on track No. 7. At that time, an engineer named Pearson, in charge of engine 1072 belonging to the railway company, with a switchman named Orr, was on track No. 6, picking up cars to take west to the gate and distribute on the concentrator and scale tracks. As Hall and the crew were picking up cars on track No. 7, Orr signaled to Nokes that engine 1072 with the cars attached was going to the scale-track. It was the custom of the yards that any crew engaged in switching operations near the west gate had the right of way until the operations should be completed. After picking up the cars, Pearson backed out upon the lead-track, and, proceeding to the switch outside of the gate, was moving back and forth over the switch and through the gate, distributing the cars on the concentrator and scale tracks. A few minutes later, Hall and the crew with him, having picked up seven cars, came out upon the lead-track and also proceeded west, the purpose being to distribute these cars on the scale-track and other tracks near the gate. The engine was headed east. Next

to it was a car loaded with ore, and then three empty cars followed by three more loaded with ore. The defendant, Nokes, and his assistant, Park, had set the hand-brakes on two of the loaded cars farthest from the engine. The purpose of this was to assist Hall in holding the train as he backed down the grade, it being customary not to couple on the air for braking purposes during the course of switching operations. Finnegan was riding on the footboard of the engine-tender. As Hall approached track No. 6, he was proceeding at the rate of from two and one-half to three miles an hour, but slowed down somewhat to permit Finnegan to turn the switch. This Finnegan did, dropping off the footboard and stepping on again while the train was in motion. Hall then continued west, his train gradually increasing in speed until as it passed the office building it was going at the rate of five or six miles an hour. He did not notice that Pearson was still engaged in switching operations at the gate until he had come to within two or three car-lengths of the point where the accident occurred. He then observed Pearson's engine pushing some cars approaching from the west, about to pass to the concentrator-track. He was unable to stop his train to allow Pearson to pass, with the result that there was a side collision between the two engines. The steam-pipes on engine 65 were broken and Hall and Hayden, his fireman, were so badly scalded by escaping steam that both thereafter died. Pearson and his fireman seeing that the collision was about to occur, jumped from their engine and escaped unhurt. Finnegan also saved himself by jumping from Hall's engine.

The negligence charged in the complaint is the following: That it was necessary because of the extent and character of the grade of the track along which Engineer Hall was about to proceed, and the weight of the train, that braking power should be applied to the cars by setting the hand-brakes thereon; that this was requisite in order to enable Hall to have complete control of the train so that he could stop it whenever occasion required; that it was the duty of defendants to set, or cause

to be set, a sufficient number of brakes to accomplish this result; that they disregarded their duty in the premises and negligently and carelessly failed to set or cause to be set brakes sufficient in number; that by reason of this negligence, Hall upon approaching the union of the. tracks near the gate and the other train moving at that point, and upon attempting to stop his train by use of the braking appliances upon his locomotive, was unable to do so; that the weight of the train and the momentum acquired by it in moving down the grade forced it beyond his control, and that notwithstanding the fact that he utilized all the means within his power, his locomotive was forced upon and against the locomotive approaching from the west, with the result that the two collided, causing the injury to him by escaping steam, *etc.* The defendants denied negligence on their part, and alleged, as an affirmative defense, that Hall was guilty of contributory negligence. Upon this defense there was issue by reply. Motions for nonsuit and a directed verdict were made by defendants and denied. The jury returned a verdict for $25,000. Defendants have appealed from the judgment and an order denying the motion for a new trial.

The first contention is that there was no substantial evidence tending to prove that the failure of the switching crew to set more than two brakes was the proximate cause of the collision, [1] and therefore, of Hall's death. In answer to this contention, it is sufficient to say that the evidence, as a whole, made a case which called for the judgment of the jury. If it be conceded for the sake of argument, as counsel contend, that the court erred in denying their motion for a nonsuit, plaintiff's case was materially aided by the evidence introduced by the defendants. This court has frequently held that if, after a motion for a nonsuit has been denied, defendant proceeds to introduce evidence, and in doing so supplies omissions in plaintiff's case, such evidence will, on motion for a new trial, or on appeal, be considered as introduced by the plaintiff, in the first place, and will be held to support the verdict in his

favor. By proceeding with his defense, the defendant assumes the risk of supplying any defects in plaintiff's case. If he does supply them, he cannot insist that the judgment should be reversed on the ground that the evidence is insufficient to support the verdict. (*Gould* v. *Barnard*, 14 Mont. 335, 36 Pac. 317; *Cain* v. *Gold Mountain Min. Co.*, 27 Mont. 529, 71 Pac. 1004; *Murray* v. *City of Butte*, 35 Mont. 161, 88 Pac. 789.)

Counsel argue that the verdict cannot be sustained because the evidence leaves it doubtful whether the collision may not with propriety be attributed to two or more causes other than the failure of Nokes and his assistants to set a sufficient number of hand-brakes, as that Hall did not see the other engine until within one or two car-lengths of it, and could not then bring his engine to a stop, or that he did see it before he had come within that distance, and did not stop, because he misjudged the speed of the other engine, thinking that it would be in the clear before he reached a point at which his engine would interfere with it. In support of this contention they cite, among other cases, *Shaw* v. *New Year Gold Mines Co.*, 31 Mont. 138, 77 Pac. 515; *Winnicott* v. *Orman*, 39 Mont. 339, 102 Pac. 570; *Fusselman* v. *Yellowstone Valley Land & Irr. Co.*, 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473, and *Scheytt* v. *Gallatin Valley Milling Co.*, 54 Mont. 565, 172 Pac. 321. These cases are not in point. It is true that plaintiff's [2] own evidence left it in doubt whether the collision was due to Hall's inability to stop when he observed the approach of the other engine because an insufficient number of brakes had been set; but this evidence aided by that introduced by the defendants justifies the inference that the collision was attributable to this, rather than to any other cause, thus bringing the case within the rule announced in *Andree* v. *Anaconda Copper Mining Co.*, 47 Mont. 554, 133 Pac. 1090, where this court said: "It is sufficient to make out a *prima facie* case if the plaintiff can show that the injury is more naturally to be attributed to the negligence alleged than to any other cause."

There was evidence to the effect that Nokes was the engine foreman; that he had entire control of the crew and was responsible for the setting of brakes; that good railroading under the circumstances required the setting of enough brakes to give the engineer such control of his train that he could stop it within one car-length if an emergency requiring it should arise; that this required at least four brakes; and that though Hall used every effort to stop after he saw the other engine approaching, which he did while he was yet two car-lengths away, he was unable to do so. From written statements signed by him after the accident, which were introduced by the defendants, it appeared that owing to the curve in the track between the office building and the gate, he could not see the other engine, and that he did not know that it was near the gate; that though he could see the gate from the upper part of the yards, and though he kept a sharp lookout, he could not see the engine approaching while he was upon the curve, until he was within two car-lengths of it, and that he then reversed his engine and used its air-brake, but was unable to stop and avoid the collision. There was evidence tending to show that he could have seen the other engine while he was yet at a distance of five or six car-lengths,—a sufficient distance to have enabled him to stop, and that Finnegan signaled him twice to stop. In his statement, he said in this connection that he did not know that Finnegan was then on the footboard of the tender. This [3] evidence tended to convict him of contributory negligence; but that his negligence in this or any other respect contributed to his injury, if the jury so found, did not bar a recovery. Under section 2 of the Employers' Liability Act (Laws 1911, Chap. 29), it is declared that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributed to such employee."

Counsel earnestly insist that defendants are entitled to a new [4] trial on the ground of excessive damages appearing to

have been given under the influence of passion or prejudice. During the trial, the court excluded all evidence tending to show other damages than pecuniary loss to Hall's family. The statute is a substantial copy of the Federal Employers' Liability Act of 1908 (35 Stats. at Large, 65), as it stood prior to the amendment of 1910. Prior to the passage of that amendment, the Act was construed by the United States supreme court, not as preserving to the relatives and dependents of an employee whose death had been caused by the negligence of his employer, the cause of action which the deceased would have had if he had lived, but as creating a new cause of action in their favor for the pecuniary loss suffered by them. (*Michigan Cent. R. R. Co.* v. *Vreeland*, 227 U. S. 59, Ann. Cas. 1914C, 176, 57 L. Ed. 417, 33 Sup. Ct. Rep. 192; *St. Louis, I. M. & S. R. Co.* v. *Craft*, 237 U. S. 648, 59 L. Ed. 1160, 35 Sup. Ct. Rep. 704, 9 N. C. C. A. 754 [see, also, Rose's U. S. Notes].)

In the ruling above referred to, and in instructing the jury, the court adopted the construction given to the Federal Act in these cases prior to the amendment. Whether this is the theory of our statute we need not stop to inquire, because the propriety of the trial court's construction of it is not now questioned, both parties assuming at the trial that the court's view of it was correct. The jury were instructed in this behalf, as follows: ''In the event that you find a verdict in favor of the plaintiff, you are instructed that the award of damages would be such an amount, as being paid now, would be the present worth of what the widow and children would have reasonably received from the deceased as pecuniary benefits had be lived. In other words, they would not be entitled to a verdict for a lump sum equal to what they would probably have received from him at various times during the period of his life had he not been killed, but only to such a sum as represents the present cash value of such aggregate amount based upon the proper rate of interest obtainable upon good security in this particular locality.'' Counsel argue that under this instruction, the jury could not have found from the evidence a verdict in

excess of $12,000, and hence that it is apparent that they were swayed by passion and prejudice.

This court has adhered to the rule that in this class of cases there can be no fixed measure of compensation, and that the award in any given case may not be accepted as a conclusive standard in any other case, because, it being the province of the jury to determine what the amount of compensation shall be, the sums awarded in different cases vary as widely as do the individual views of the juries, the members of which are chosen from among the body of citizens in the community in which the trial takes place. In *White* v. *Chicago, M. & St. P. Ry. Co.*, 49 Mont. 419, 143 Pac. 561, it was said: "So long as we have a system which confides to juries the duty to determine the issues involved in this character of cases and to fix the amount of compensation to be paid, unless the result of their deliberation is such as to shock the conscience and understanding, it must be accepted as conclusive."

But when the jury have made an award greater than the evidence justifies from any point of view, the defendant is entitled to a new trial on the ground that they have been influenced by passion or prejudice, unless it is apparent that the amount is the result of a miscalculation. In the latter case, it being clear that the plaintiff is entitled to a recovery in an amount less than that fixed by the jury, which is reasonably determinable from all of the evidence, this court has not hesitated to reduce the amount to what it has deemed the plaintiff justly entitled. *Melzner* v. *Chicago, M. & St. P. Ry. Co.*, 51 Mont. 487, 153 Pac. 1019, *Chenoweth* v. *Great Northern Ry. Co.*, 50 Mont. 481, 148 Pac. 330, and *Conway* v. *Monidah Trust et al.*, 51 Mont. 113, 149 Pac. 711, are illustrative cases.

From the evidence, it appears that at the time of the accident [5] Hall was of the age of thirty-five years. His expectancy of life was then thirty-two years. He was earning on an average of $150 per month. The evidence as to what portion of this sum was devoted to the support of the plaintiff and his two children is meager and indefinite. The plaintiff was not

able to state with any degree of definiteness what part of these monthly earnings were contributed to the support of herself and the children. As near as she could estimate, the amount expended for rent, food and clothing was $850 per annum. What Hall devoted exclusively to his personal expenses and for insurance and the like does not appear. He was in good health, and at the time of his death did not smoke, nor did he drink, except when he would buy beer for use in the home. It must be assumed, however, that some substantial part of his earnings was consumed in providing clothing for himself and to defray other personal expenses such as necessary in the ordinary life of an average man of his station. Under the instruction above, the amount fixed by the jury could not exceed a sum greater than what would be equal to the present worth of the amount the plaintiff and her children could reasonably have received from Hall's wages had he lived and continued to earn them. There was evidence from which it appeared that according to standard annuity tables, the present worth of an annuity of $850 for thirty-two years at the rate of six per cent interest per annum would amount in round numbers to $11,968, or, at seven per cent, to $10,750. There was evidence, too, that good security for investment could be obtained at the rate of six or seven per cent exclusive of commissions. While this evidence was not binding on the jury, it should have furnished them some aid in fixing the amount of the recovery. Apparently they did not consider it, but proceeded upon the assumption that if Hall had lived, his earnings would have continued to maintain the average of $150 per month for the whole period of his expectancy of life, and that he would have contributed the entire amount to the maintenance of his family; for the present worth of an annuity of $1,800 per annum, the whole amount of his earnings per year would amount to $25,344, substantially the amount of the verdict of the jury. The sum of $25,000 invested at six per cent would yield an income of $1,500 per annum, nearly double the contribution Hall was making at the time of his death; so that at the end of his

expectancy of life, his family would still have the principal intact, besides the benefit of the income upon it for the whole term of the expectancy. Upon this condition of the evidence, the verdict is excessive. It is apparent, however, we think, that the excessive amount awarded was due not to the influence of passion or prejudice, but rather to the fact that the jury failed to give due regard to the instruction, and to fix their award accordingly. Under the evidence, we think the sum of $15,000 would have been entirely commensurate with the loss sustained by the plaintiff and the children.

Counsel insist that the evidence shows conclusively that Hall was guilty of contributory negligence in not calling for the setting of more brakes, which he had the right to do, in case necessity arose, and that though, under the statute, contributory negligence is not a complete defense, the damages to which plaintiff would otherwise have been entitled should have been proportionately reduced by the jury. It is true that Hall had the right to call for the setting of additional brakes whenever he deemed it necessary. It also appears that the brakes set by Nokes and his assistants were sufficient to meet all requirements while a train of the weight of the one Hall was in charge of is descending the grade toward the west when no other engine is engaged in switching operations on the scale-track, and that Hall was not aware of the presence there of the other engine. If he was not aware of the presence of the other engine, the necessity for his calling for additional brakes did not arise, and, therefore, his failure to call for them did not constitute contributory negligence. In any event, it was a question for the jury whether he was at fault, and hence whether the amount of damages should have been reduced accordingly.

Error is assigned upon the refusal of the court to admit in evidence photographs showing the part of the yards where the collision occurred, and to submit certain instructions on the subject of contributory negligence. The contentions based upon these assignments are without merit.

The cause is remanded to the district court, with directions to grant the defendants a new trial unless the plaintiff shall within thirty days after the filing of the *remittitur* file with the clerk of that court her consent in writing that the verdict may be reduced to the sum of $15,000. If such written consent is filed, the judgment will be modified accordingly, and, when so modified, will stand affirmed.

*Modified and affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.