CORNELL, RESPONDENT, *v.* GREAT NORTHERN RY. CO. ET AL., APPELLANTS.

(No. 4,394.)

(Submitted December 10, 1919.   Decided February 2, 1920.)

[187 Pac. 902.]

*Railroads—Master and Servant—Personal Injuries—Employers' Liability Act—Evidence—Mortality and Annuity Tables—Loss of Sight—Contributory Negligence—Partial Defense—Pleading—Burden of Proof—Instructions—Physical Examination of Plaintiff—Assumption of Risk.*

Personal Injuries—Master and Servant—Railroads—Excessive Verdict.
    1.   *Held,* that a verdict for $17,500 for the partial loss of plaintiff's left eye, the sight of the right having been destroyed many years before, was excessive, it appearing that he was sixty-seven years of age, with a life expectancy of ten years, was at the time of the accident, and had

been for the five years preceding, earning $50 a month operating a stationary gasoline engine at a water-tank.

Same—Mortality Table—Evidence.

2. Mortality tables are competent evidence to aid the jury in determining the probable duration of the life of an injured employee, and may be used to aid them, by comparing his earnings before and after the injury, to ascertain the amount which will compensate him for his loss by reason of impairment of his earning capacity.

Same—Damages—Mortality and Annuity Tables.

3. In determining the amount to be awarded plaintiff in a personal injury action, the jury must be left to exercise their discretion, unlimited by any fixed standard, after examining the facts and circumstances of the case, considering annuity and mortality tables, *etc.*

Same—Mortality Tables—Evidence—Purpose of Introduction.

4. The office of mortality tables in a personal injury case is to furnish the jury a basis by which they may ascertain the present worth of the several sums which, but for the injury, would have been received by plaintiff in the form of deferred payments, and the earning power of money in the general community in which the injury occurred; they can only serve as a guide in determining the amount of the verdict and not as an absolute standard by which to fix the award.

Same—Instructions—Mortality and Annuity Tables—Not to be Viewed as Definite Standard for Awarding Damages.

5. *Held,* that an instruction from which the jury could infer that they were at liberty to regard mortality and annuity tables as furnishing an authorized and definite standard by which they might fix their award in a personal injury action, was prejudicially erroneous.

Same—Loss of Sight—Cost of Attendant—Evidence—When Incompetent.

6. Evidence that it would cost $100 a month to provide an attendant for a blind man, *held* incompetent where the question whether plaintiff, where sight, though impaired, was not destroyed, would ever need an attendant was left to speculation as to what might or might not occur in the future.

Same—Total Blindness—Care and Attendance—Damages.

7. *Obiter:* In a case in which the plaintiff has become totally blind by reason of the injury complained of, or where there is evidence tending to show a reasonable probability that the injury will finally produce that result, the jury may, in assessing the damages, take into consideration the fact that he will need care and attention by others, if there is evidence showing with reasonable certainty that such need will arise and when it will arise.

Same—Employers' Liability Act—Purpose of Legislation.

8. The purpose of the legislature in enacting the Employers' Liability Act (Chap. 29, Laws 1911) was to substitute for the benefit of railway employees the action provided by it, in place of the common-law action, and, in case of death, to create a new cause of action in favor of the dependents named, for the pecuniary loss suffered by them.

Same—Employers' Liability Act—Pleadings.

9. The Employers' Liability Act (Chap. 29, Laws 1911), does not change in any particular the form of the statement of plaintiff's cause of action from that at common law, but does require all the other pleadings to be so formulated as to present the issues arising upon defenses permitted by it, including the matter which may be alleged in mitigation of damages.

Same—Contributory Negligence—Burden of Proof.

10. *Held,* that the rule that in a personal injury action the burden of pleading and proving contributory negligence on the part of the plain-

tiff is upon defendant was not changed by the Employers' Liability Act, *supra,* and that refusal of an offered instruction placing the burden upon plaintiff was proper.

Same—Contributory Negligence—Partial Defense—Must be Pleaded.

11.   Under the rule of comparative negligence declared by Chapter 29, Laws of 1911, contributory negligence on the part of plaintiff is a partial defense which must be pleaded.

Same—Physical Examination—Instructions—Proper Refusal.

12.   An instruction that plaintiff's refusal to submit to a physical examination in the presence of the jury might be considered by them and given such weight as they might in their discretion deem proper, *held* properly refused, the defendant, under *May* v. *Nothern Pac. Ry. Co.,* 32 Mont. 522, not having any right to demand such an examination.

Same—Assumption of Risk—When Defense not Available.

13.   *Held,* that the defense of assumption of risk was not available to defendant, in an action under Chapter 29, Laws of 1911, where such risk arose by reason of the negligence of one of defendant company's employees in failing to make proper repairs on a gasoline engine when called to his attention.

Same—Assumption of Risk—Jury Question.

14.   The question whether plaintiff assumed the risk incident to remaining in defendant's employment for a period of two months and a half after repairs on a gasoline engine became necessary, but were not made, was a question to be determined by the jury.

[On excessiveness of verdicts in actions for personal injuries in impairment or loss of eyes, see comprehensive note in **L. R. A.** 1915F, 199.]
    [On the use of mortality tables as evidence, see notes in 40 **L. R. A.** 553; **L. R. A.** 1918C, 1071.]

*Appeal from District Court, Musselshell County; Geo. P. Jones, Judge.*

Action by William D. Cornell against the Great Northern Railway Company and another. From a judgment for plaintiff and a denial of a new trial, defendants appeal. Reversed and remanded.

*Messrs. Veazey & Veazey,* for Appellants, submitted a brief; *Mr. I. Parker Veazey, Jr.,* argued the cause orally.

The Excessiveness of the Award: The plaintiff was sixty-seven years of age. This is a case, therefore, where practically the injured man's working days were over. It is a case almost without parallel in injury cases where the age of the plaintiff was so great. As far as any reported cases showing what awards have been given for similar injuries, it is absolutely without parallel, all the reported cases involving awards to persons of

a much different age. We refer the court to the very elaborate note in L. R. A. (n. s.) 1915F, pages 30 to 512, setting forth excessiveness in personal injury verdicts, in cases embracing personal injuries of every conceivable kind. Loss of or injury to eyes is covered on pages 194 to 199. We submit the following authorities from that note: *Olwell* v. *Skobis,* 126 Wis. 308, 105 N. W. 777; *De la Vergne etc. Mach. Co.* v. *Stahl,* 24 Tex. Cr. 471, 60 S. W. 319; *Cook* v. *Missouri Pac. R. Co.,* 94 Mo. App. 417, 68 S. W. 230; *Muetze* v. *Procasky,* 126 Ill. App. 589; *Peterson* v. *Roessler etc. Chemical Co.,* 131 Fed. 156. In this case, by comparison with other cases, all of the facts on damage are against the plaintiff—extreme age, short expectancy, low earnings, previous injury, and mere impairment, though an actual impairment, of vision as distinguished from total loss of sight. The amount to be fixed by the court should be consistent with these facts, and should be able to stand comparison if a case were before the court where the reverse picture were presented.

The whole matter of annuity tables has been, we find, so thoroughly canvassed by this court and by the supreme court of the United States, that we will content ourselves by citing but one case from the supreme court of the United States and four cases from the supreme court of this state: *Bourke* v. *Butte Elec. & Power Co.,* 33 Mont. 267, 288, 83 Pac. 470; *Lewis* v. *Northern Pac. Ry. Co.,* 36 Mont. 207, 224, 92 Pac. 469; *Robinson* v. *Helena Light & Ry. Co.,* 38 Mont. 222, 245, 99 Pac. 837; *Moyse* v. *Northern Pac. Ry. Co.,* 41 Mont. 272, 291, 108 Pac. 1062; *Vicksburg etc. Ry. Co.* v. *Putman,* 118 U. S. 545, 30 L. Ed. 257, 7 Sup. Ct. Rep. 1.

The Act of 1911 (Chapter 29) is not a mere fellow-servant statute. It is a law imposing liability for primary as well as secondary negligence. It imposes liability for negligence of vice-principals of officers, as well as for negligence of fellow-employees in train movements, and it also imposes liability to all railway employees for injuries resulting in whole or in part "by reason of any defect or insufficiency due to its negligence in its engines, appliances, machinery, works or

other equipment." The statute, therefore, covers this case, as this is an injury claimed to have resulted from defects in engines, appliances, machinery, works or other equipment.

May the plaintiff, however, elect to sue at common law instead of under the statute? The Act of 1911 is a full and complete exposition of the views of the legislature as to what should be the liability of railway corporations for injuries to, and death of, its employees. It covers everything. As stated, it is not a mere fellow-servant law, but is a law defining, and intended to define, the full and complete liability of railway companies to its employees. In death suits it will be noted that it gives the right of action to new beneficiaries, and in some respects enlarges and in other respects curtails the list of beneficiaries. It is also clear that it was the intention of the legislature to do away with all confusion existing in existing legislation (distinctions between survival actions and death actions, between instantaneous death and other deaths, between fellow-servant defenses and contributory negligence), and to embrace in one law a definition of the entire liability, and to make that liability conform to the federal law: the liability to the intrastate employee was to be the same as the liability to the interstate employee.

Moreover, sections 6213 and 8060, Revised Codes, provide that "In this state there is no common law in any case where the law is declared by the Codes or other statute." The effect of this statute cannot be misunderstood. It has been applied in the following cases, which are helpful here: *State* v. *Crowe,* 39 Mont. 174, 178, 18 Ann. Cas. 643, 102 Pac. 579; *Marron* v. *Great Northern Ry. Co.,* 46 Mont. 593, 603, 129 Pac. 1055; *In re Beck's Estate,* 44 Mont. 561, 580, 121 Pac. 784, 1057; *Truro* v. *Passmore,* 38 Mont. 544, 549, 100 Pac. 966; *Cunningham* v. *Northwestern Imp. Co.,* 44 Mont. 180, 181, 216, 119 Pac. 554; *McKnight* v. *Oregon Short Line R. Co.,* 33 Mont. 40, 42, 82 Pac. 661, 662; *John* v. *Northern Pac. Ry. Co.,* 42 Mont. 18, 38, 32 L. R. A. (n. s.) 85, 111 Pac. 632. We can add nothing to the unreported opinion of Judge Bourquin, in this district, sustain-

ing a demurrer and holding directly that there is now no common-law liability to employees, but that their rights are governed by this statute. (See *Kane* v. *Great Northern Ry. Co.*)

Under Chapter 29, Laws of 1911, contributory negligence is no longer a defense in an action, but concerns only the issue of damages. The statute expressly provides that contributory negligence shall not be a defense, but that the damages shall be diminished in proportion to the amount of negligence attributable to the employee.

As contributory negligence is thus no longer a defense and concerns the issue of damages only, it follows that it is no longer necessary to plead the same, and evidence thereof is admissible under a general denial; and it follows similarly that the burden of proving damages being on the plaintiff, the burden of proving that whole issue is on the plaintiff; and, therefore, where an issue arises in the trial on evidence as to contributory negligence, the burden of proof is on the plaintiff to show how much the defendant's negligence contributed to cause the accident, and the extent of the contribution, or absence of contribution, by the plaintiff's negligence. (*Kansas City So. R. Co.* v. *Jones*, 241 U. S. 181, 60 L. Ed. 943, 36 Sup. Ct. Rep. 513, 514, 11 N. C. C. A. 43.)

*Mr. E. E. Enterline* and *Mr. G. J. Jeffries*, for Respondent, submitted a brief and argued the cause orally.

The Excessiveness of the Award: Counsel for appellants cite certain authorities and the elaborate note in L. R. A. (n. s.) 1915F, pages 30 to 512, in which note is set forth excessiveness of awards in personal injuries of various kinds. Counsel for appellants conclude the discussion on this branch of the case with the statement that after the publication of the elaborate note in the authority cited *supra*, "it cannot be claimed that courts have no guide in the matter of handling excessive awards in personal injury cases." It would be manifestly unfair to consider the annotations as completely controlling. Each case must depend upon its own facts. While it is true that courts

examine other cases for the purpose of determining in a way the reasonableness of an award, yet changing conditions and the facts in any given case may often require a radical departure from the awards either approved or condemned. All the cases referred to by counsel for appellants were decided before prices had advanced for labor and living expenses. This court no doubt will take judicial notice that it takes more than three dollars to purchase now what one dollar would have purchased formerly. The courts have a right to take into consideration in passing upon the amount of damages the difference in the present and past value of money, also as affected by the newer and older parts of the country. (Watson on Personal Injuries, sec. 362.)

There is no such passion or prejudice disclosed by the record as would authorize this court to grant appellants a new trial, even though this court should conclude that the verdict was excessive. (*Yergy* v. *Helena L. & Ry. Co.*, 39 Mont. 213, 18 Ann. Cas. 1201, 102 Pac. 310; *Neary* v. *Northern Pac. Ry. Co et al.* 41 Mont. 480, 110 Pac. 226; *Ardmore Oil & Milling Co.* v. *Barner* (Okl.), 179 Pac. 932; *Bothe* v. *True,* 103 Kan. 562, 175 Pac. 395.)

Respondent was furnished by the master with a defective bolt. This bolt was used by the respondent in making a temporary repair on the gasoline engine which he was operating. Immediately after the repair was made it was inspected by Hudgin, the pump repairer, who assured the respondent that the same was all right and to go on and use it until the proper bolt could be obtained. He also assured the respondent that he would order the same immediately, and his testimony shows that he did order them but that he neglected to deliver them to respondent. The danger in remaining at work was not so obvious or imminent that a reasonably prudent man would have declined to stay there and perform the work assigned to respondent. The time during which respondent remained at work after the repair was made was not unreasonable, and especially so when he was assured by the master that the bolts had been ordered, that the one he was using would answer until the proper bolt arrived,

and that he would get them just as soon as he could.  Under these circumstances the authorities are uniform in holding that the respondent is not guilty of contributory negligence, nor did he assume the risk in remaining at his employment.  (*Kelley* v. *Fourth of July Mining Co.*, 16 Mont. 484, 41 Pac. 273; *Coulter* v. *Union Laundry Co.*, 34 Mont. 590, 87 Pac. 973; *Johnson* v. *Utah Consol. Min. Co.*, 41 Utah, 142, 125 Pac. 407; *White* v. *Utah Condensed Milk Co.*, 50 Utah, 278, 167 Pac. 656; *Seaboard Air Line Ry.* v. *Horton*, 233 U. S. 492, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635, 8 N. C. C. A. 834; reaffirmed in 239 U. S. 595, 60 L. Ed. 458, 36 Sup. Ct. Rep. 180 [see, also, Rose's U. S. Notes]; *Lynn* v. *Omaha Packing Co.*, 88 Neb. 720, 130 N. W. 425, 1 N. C. C. A. 705; *La Fleur* v. *M. A. Burns Lumber Co.*, 38 Cal. App. 279, 176 Pac. 58; *Chicago, R. I. & P. Ry. Co.* v. *Rogers*, 60 Okl. 249, 159 Pac. 1132; 26 Cyc. 1209; 18 R. C. L., 696, 699, 701–703.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Plaintiff having recovered a judgment in the district court, defendant has appealed therefrom and from an order denying its motion for a new trial.

For some five years prior to February 5, 1916, plaintiff had been in the employ of the defendant railway company (referred to hereafter as the company), as an engineer operating a stationary gasoline engine to furnish power for hoisting coal into the coal docks of the company and for pumping water into its water-tank at Cushman station, in Musselshell county.  The defendant Hudgin was employed in the capacity of a pump repairer.  It was his duty to inspect and, when occasion required, to repair the gasoline engines of the company at Cushman and other stations along its line of railway.  The igniter or device used to produce combustion adopted by the manufacturer of the Fairbanks-Morse engine, the type in use at Cushman station, is provided with a heavy steel plate elliptical in shape, which fits over the aperture in the head of the cylinder through which the de-

vice is inserted and is held in place by two steel stud bolts. These are made of cold rolled steel and are threaded throughout their entire length. The device is adjusted for service as follows: The bolts are screwed into holes sunk in the face of the cylinder which are properly threaded for that purpose. The plate of the igniter, being provided with holes to correspond with those in the cylinder, is slipped over the projecting ends of the bolts and screwed tight to the face of the cylinder by hexagonal nuts, a gasket of the same size as the plate being first placed between the plate and the cylinder. The office served by the gasket is to prevent the escape of gas between the plate and the face of the cylinder, and to retain the full force of the explosions in the cylinder. The gasket ordinarily used is made of asbestos felt paper covered with thin sheets of copper or interwoven with copper wires. The plates or wires, as the case may be, strengthen the paper so that it will not go to pieces and be blown out by the force of the explosions. At the time of the accident out of which this action arose, the plaintiff, having at hand none of these gaskets, was using others made of the felt paper as a temporary substitute. It was a part of the plaintiff's duty to remove the igniter from time to time to clean the spark points and to make repairs upon the engine with the material he had at hand, when occasion demanded and Hudgin was not present. This frequently required replacement of the gasket, because it would go to pieces when the plate was removed. On November 20, 1915, one of the stud bolts was broken. Plaintiff, having no other for use, substituted temporarily a wrought-iron machine bolt with a round head. This was longer than the stud bolt. The plaintiff used metal washers to take up the extra space between the head of the bolt and the plate, to enable him to screw the bolt tight so that it would hold the igniter in place. To do this it was necessary to use an alligator wrench, because the one furnished for ordinary use would not take hold of the head of the bolt. A short time after these repairs had been made, the defendant Hudgin, who happened to come to Cushman station, examined the engine to ascertain whether it was in repair. He assured the

plaintiff that it was safe, at the same time promising him that he would furnish another bolt to take the place of the machine bolt. Plaintiff had some time before asked him for a supply of gaskets. Hudgin did not thereafter furnish a bolt, though the plaintiff several times requested him to do so, and though he knew that in the condition it then was the engine was not safe; nor did he furnish the gaskets. The machine bolt frequently worked loose and permitted the gas from the explosions to escape.

The plaintiff alleges: "That on the fifth day of February, 1916, and while the plaintiff was in the employ of the defendant Great Northern Railway Company in the capacity aforesaid, and while running and operating said gasoline engine, the said igniter in the head of said engine, suddenly and without warning, and by reason of the dangerous and defective condition thereof as aforesaid, and by reason and owing to the negligence and carelessness of the defendants in failing, neglecting and omitting to furnish and supply the said proper, suitable and necessary repairs for said gasoline engine, and in carelessly and negligently failing, neglecting and omitting to repair the same, became loose and the gasket therein blew out, thereby throwing, with great force and violence, pieces of asbestos, sparks, and other material upon and against plaintiff's head, face, and body, thereby cutting, lacerating, bruising, wounding, burning and injuring plaintiff's head, face, left eye and body." It is further alleged that from the injury so received the sight of plaintiff's left eye became and has remained blurred and almost wholly destroyed; that he has been compelled to undergo several operations to obtain relief from the extreme pain suffered by reason of the injury; that he will finally lose the sight of his eye entirely; and that he has become incapacitated to do any work, whereby his earning power has been entirely destroyed.

The defendants deny all the allegations in the complaint imputing negligence to them, or either of them, and allege as defenses that plaintiff was guilty of contributory negligence, that he assumed the risk, and that his injury was due to the fault of his fellow-servants.

[1]  The verdict was for the sum of $17,500.  One of the grounds of the motion for new trial was that this verdict was so excessive as to show that it was given under the influence of passion and. prejudice.  In determining the motion the trial judge expressed the opinion that, while the jury had not been influenced by passion and prejudice, their award was excessive to the amount of $6,500, and ordered a new trial unless the plaintiff should consent that the verdict and judgment be reduced by this amount.  Thereupon, the plaintiff having given his consent, the reduction was made and the judgment amended accordingly.  ' Counsel insist that the court erred in not granting the motion without condition.

The evidence discloses that the plaintiff had lost the sight of his right eye many years before the accident; that his only injury was a partial loss of the sight of his left eye and the incidental pain and suffering consequent to such an injury; that he was sixty-seven years of age and had an expectancy of life of only ten years; that he was earning at that time $50 per month; and that for the five preceding years he had earned not to exceed an average of this sum per month.  Under these circumstances we think the verdict was much in excess of just compensation for the injury.  Assuming that plaintiff should live for the full period of his expectancy of life, retaining his capacity for service in the same or other equally remunerative employment unimpaired, and that the course of his employment would not be interrupted by sickness or other cause, the gross amount of his earnings for the entire period of his expectancy of life would be $6,000, without any reduction in consideration of his having the present use of this sum instead of his having it paid to him in deferred monthly installments.  In addition to this he was awarded $11,500 for pain, suffering, etc.  The two sums together, invested at interest at the rate of six per cent per annum, would enable him to secure an income of nearly double the amount of his gross annual earnings, and at his death to leave the principal to descend to his heirs.  Even the sum to which the trial court reduced the award, invested at the same rate of interest, would

secure an annual income greater than the amount of his gross earnings. In the absence of evidence disclosing unusual pain and suffering by plaintiff, and outlay for medical and surgical treatment (and there is no evidence on this point), we think the amount awarded to him might properly have been further reduced. The office of juries in such cases is to compensate the living plaintiff for the loss sustained by him, and not to endow his heirs. We are of the opinion, however, that the excessiveness of the award is attributable to miscalculation by the jury under the instruction submitted to them rather than to feelings of passion and prejudice. This, we think, will be apparent when we consider the instruction as to the use the jury might make of annuity and mortality tables in determining the amount they might allow plaintiff to cover the wages of an attendant, in connection with the evidence on that subject, in case he should lose the sight of his eye entirely. In this connection the court submitted to the jury the following instruction: "If you find for the plaintiff, and should further find that the capacity of the plaintiff to labor or earn money has been reduced by reason of his injuries, you should award him such sum on that account as will purchase an annuity equal to the difference in the amount he could earn annually, in view of his injuries, and the amount he could have earned annually were it not for his injuries, taking into consideration, however, the diminution of his earning capacity due to causes other than the injury itself, such as advancing age, the apparent present state of plaintiff's health, the apparent permanence or lack of permanence of his disability, his habits of life, and the possibility that his employment would have been continuous, and the like." Nowhere else in the instructions was this subject adverted to. Counsel for the defendants objected to the giving of the instruction on the grounds (1) that it laid down an absolute standard by which the jury were required to fix the amount of recovery for loss of earnings, and (2) that it authorized a recovery of the full amount of such annuity, even though the injury was caused in part by plaintiff's contributory negligence, and did not permit any diminution by the jury of this amount in proportion to the negligence attributable to him.

The instruction was taken, substantially, from the case of *Moyse* v. *Northern Pacific Ry. Co.*, 41 Mont. 272, 108 Pac. 1062; the only addition made to the one there considered being a more particular enumeration of the conditions to be taken into account by the jury in connection with the mortality and annuity tables in fixing the amount of damages.   Counsel for the plaintiff insist that this court expressly approved the instruction as given in that case.   A careful reading of the opinion in its entirety will demonstrate that counsel are in error.   The court did say that, as an abstract statement of the law, no fault was to be found with the instruction, but proceeded to point out that in other instructions given in connection with it the trial court carefully called the attention of the jury to the other conditions in evidence which they should consider, and the use they might make of these tables, at the same time telling them that these should not be taken as an absolute standard for their calculations, but should be used by them as a guide only, so far as the facts disclosed by the evidence corresponded to those from which the tables were compiled.   The conclusion was reached that the instructions on the subject as given, taken together, embodied the rule which had theretofore been announced by this court in *Robinson* v. *Helena Light & Ry. Co.*, 38 Mont. 222, 99 Pac. 837, and the other cases cited.   A careful examination of the opinion would have made it clear that this court merely held the instruction not misleading when read in connection with the other instructions which explained or limited the probative force the jury should give to this character of evidence.

Mortality tables are competent evidence to aid the jury in **[2, 3]**   determining the probable duration of plaintiff's life, and hence to aid them, by comparing his earnings before and after the injury complained of, to ascertain the amount which will compensate him for his loss by reason of the impairment of his earning capacity.   If the impairment is permanent, the loss will continue throughout life; and hence his damages should be fixed at such a sum as will reasonably compensate him for his loss, making allowance for any diminution in his earning capacity

which may be due to causes other than the injury, such as advancing age, the apparent state of his health at the time of the injury, his habits of life, the possibility that he might or might not have been engaged in continuous remunerative employment, and the like. Even with the aid of these tables, therefore, the finding of the jury must necessarily be based upon considerations more or less speculative in character, and they must be left to exercise their discretion unlimited by any fixed standard; for, as we said in *Jones* v. *Shannon,* 55 Mont. 225, 175 Pac. 882: "There is no standard of measurement by which to determine the amount of damages to be awarded other than the intelligence of the jury, made up of impartial men governed by a sense of justice. To the jury, therefore, is committed the exclusive task of examining the facts and circumstances of each case and valuing the injury and awarding compensation in the shape of damages." To the same effect is the statement in *White* v. *Chicago, M. & St. P. Ry. Co.,* 49 Mont. 419, 143 Pac. 561.

The office served by annuity tables is to furnish the jury a [4] basis by which they may ascertain the sum in cash which will be deemed adequate compensation for the loss; in other words, a basis by which they may ascertain the present worth of the several sums which would otherwise have been received by him in the form of deferred payments, and the earning power of money in the general community in which the injury occurred. These tables are based upon calculations by insurance companies as to the rates at which they may safely sell annuities; the selling price being dependent upon the prevailing rate of interest in that general locality—the higher the rate, the cheaper the price at which an annuity may be sold. As in the case of mortality tables, they cannot be accepted as an absolute basis for this purpose, but only as a guide to the jury in the exercise of an intelligent discretion in determining the final result. When, therefore, these tables have been admitted in evidence, as they were here, the court should not in its instructions leave the jury to infer that they are to serve as an absolute standard.

At the settlement of the instructions counsel for the defendants, besides objecting to the instructions as above stated, offered [5] one which, while not as clear and explicit as it might have been, stated generally the office of this character of evidence. The court refused to give it, thus leaving the jury to infer that they were at liberty, if they chose, to regard the tables as furnishing an authorized and definite standard by which they might fix their award. Upon the evidence it was a controverted question as to what the extent of the jury was. The instruction, standing alone and without explanation or limitation in its application by any other, was, in our opinion, misleading, and therefore prejudicially erroneous.

We may properly notice here the evidence referred to above, [6] touching the expense plaintiff might be required to incur to secure an attendant. Dr. Lewis, called as an expert witness by the plaintiff, testified as to the condition of plaintiff's eye at the time of the trial, and expressed the opinion that the injury was permanent and could not be remedied or cured by medical treatment. Being asked if he was familiar with the cost of procuring an attendant to care for a blind man, and having answered in the affirmative, he was then permitted to state, over the objection of the defendants, that it would cost $100 per month. Objection to this evidence on the ground, among others, that it was incompetent and immaterial, was overruled. The ruling was erroneous. Though at the time of the trial the vision of plaintiff's eye was partially obscured, it was clear enough to enable him to care for himself and to go where he chose without attendance. Dr. Lewis had also expressed the opinion that the cause of the defective condition was hemorrhage of the vitreous, produced by the accident, and that a recurrence of it would likely produce total blindness. On this subject, however, he expressed no other opinion. Whether or not, therefore, plaintiff would ever need an attendant was left to be inferred by the jury, not from facts or opinions in the evidence tending to show a reasonable probability that total blindness would be the result, but altogether as a matter of speculation as to what might or might

not occur in the future. From this point of view the evidence was incompetent. It was also prejudicial, for it named a definite sum which the jury might add to the amount awarded for other elements of damage, and doubtless they made it the basis of their findings in this behalf.

In a case in which the plaintiff has become totally blind, or [7] there is evidence tending to show a reasonable probability that the injury will produce this result, it is competent for the jury, in assessing the damages, to take into consideration the fact that he will need care and attention by others, if there is evidence showing with reasonable certainty that such need will arise and when it will arise. (*Bell* v. *Milwaukee Ry. & L. Co.,* 169 Wis. 408, 172 N. W. 791.) Even so, the amount they should allow in this behalf rests in their discretion under proper instructions. In our opinion, the excessive amount of the verdict is to be accounted for in part by the admission of this evidence.

There seems to have been some confusion in the minds of the court and counsel as to whether this action was brought and was [8] triable under the statute (Laws 1911, Chap. 29), or was an action at common law. The statute is, in substance, a copy of the federal Employers' Liability Act, as it stood prior to the amendment of 1910 (35 Stats. at Large, 65 [8 Fed. Stats. Ann., 2d ed., p. 1208, *etc.; U. S. Comp. Stats., secs. 8657–8665]).* (*Hall* v. *Northern Pac. Ry. Co.,* 56 Mont. 537, 186 Pac. 340.) Section 1 of the Act declares the railway company liable to the employee for any injury received by him through the negligence of any officer or other employee engaged in the operation of the railway, or where the injury occurs by reason of any defect or insufficiency of any engine, car or other appliance. In case of the death of the employee, instantaneous or otherwise, the liability ceases except as to the personal representative for the benefit of the members of the family, or to the parents, or to the next of kin who are dependent upon him. Section 2 abolishes the defense of contributory negligence, and merely makes such negligence on the part of the employee a matter which may be shown in mitigation of the damages. In addition, it declares

that the employee shall not be held guilty of contributory negligence in any case where the employer has violated any provision of law enacted for the safety of employees, which has contributed to the injury or death of the employee. Section 3 abolishes the defense of assumption of risk in any case where the dangerous condition out of which the injury has arisen is due to the negligence of the employer. Section 4 declares null and void any contract, rule or regulation, the purpose or intent of which is to enable the employer to exempt itself from liability created by the Act.

Clearly, the purpose of the legislature in enacting this statute was to substitute for the benefit of the employee of a railway company the action it provides for in place of the action at common law, and at the same time, in case of his death, to create a new cause of action in favor of the dependents named for the pecuniary loss suffered by them. (*Hall* v. *Northern Pac. Ry. Co., supra; Michigan Central R. R. Co.* v. *Vreeland,* 227 U. S. 59, Ann. Cas. 1914C, 176, 57 L. Ed. 417, 33 Sup. Ct. Rep. 192; *St. Louis, I. M. & S. R. Co.* v. *Craft,* 237 U. S. 684, 59 L. Ed. 1160, 35 Sup. Ct. Rep. 704 [see, also, Rose's U. S. Notes].) Its provisions cover the whole subject of the liability of railway companies for injury to or death of an employee, whether caused by the negligence of an agent who occupies the position of a vice-principal or of any other employee. If there were any doubt upon the subject, this would be set at rest by sections 6213 and 6214 of the Revised Codes, which declare:

Section 6213: "In this state there is no common law in any case where the law is declared by the Code or other statute."

Section 6214: "The Code establishes the law of this state respecting the subjects to which it relates." (*Marron* v. *Great N. Ry. Co.,* 46 Mont. 593, 129 Pac. 1055; *In re Beck's Estate,* 44 Mont. 561, 121 Pac. 784, 1057.)

It is true that so far as the injured employee is concerned the [9] statute does not change in any particular the form of the statement of the plaintiff's cause of action; but it does require all the other pleadings to be formulated so as to present only

the issues arising upon defenses permitted by it, including the matter which may be alleged in mitigation of the damages.   We have ventured these comments upon the statute because a new trial must be ordered on account of the errors discussed above, to the end that the court and counsel may avoid the confusion into which they fell at the former trial.

The second objection to the instruction was properly over-ruled, for the reason that there was no evidence, either in plain-tiff's case or in that introduced by the defendants, tending to show that the plaintiff was guilty of contributory negligence in any respect.

In submitting the instructions the court seems to have assumed [10]   that the issue of contributory negligence was in the case and to be determined by the jury; for, while it did not explicitly define for the jury the triable issues, it said to them: ''The issues in this case are set forth in the pleadings which are herewith submitted to you.''   At the settlement of the instructions, coun-sel for defendants requested the court to submit the following, which was refused: ''You are instructed that the burden of the issue of contributory negligence is on the plaintiff to show whether or not his contributory negligence, if any, contributed to cause his damage, if any, and, if so, the extent of the con-tribution.''   This ruling is assigned as error.   The refusal was correct because, as stated above, there was no evidence from which the jury could find plaintiff guilty of contributory negli-gence in any respect.   Furthermore, prior to the enactment of the Employers' Liability Act, *supra,* the rule was established in this jurisdiction that the burden was upon the defendant to plead and prove the defense of contributory negligence.   The only exception to this rule was: ''Where plaintiff's own act is the proximate cause of his injury, he must allege and prove that in doing the particular act he was moved by those considerations for his own safety which would actuate a reasonably prudent person, similarly situated, to do as he did.''   (*Lynes* v. *North-ern Pac. Ry. Co.,* 43 Mont. 317, Ann. Cas. 1912C, 183, 117 Pac. 81.)   The statute does not change the rule; for, though under

[11]   the rule of comparative negligence declared by it contributory negligence is only a partial defense, still the burden to prove it is upon the defendant.   Section 6550 of the Revised Codes provides: ''A partial defense may be set forth, as prescribed in the last section; but it must be expressly stated to be a partial defense to the entire complaint, or to one or more separate causes of action therein set forth.   Upon a demurrer thereto, the question is, whether it is sufficient for that purpose. Matter tending only to mitigate or reduce damages, in an action to recover damages for the breach of a promise to marry, or for a personal injury, or an injury to property, is a partial defense, within the meaning of this section.''   In the recent case of *McKim* v. *Beiseker*, 56 Mont. 330, 185 Pac. 153, after considering this and the preceding section, this court said: ''If a defendant does not wish to offer evidence in mitigation or reduction of damages, then he may omit from his answer any partial defense under which such evidence is admissible.   But if he desires to offer evidence at the trial of matter tending to mitigate or reduce damages, then the answer, to make such evidence competent, must contain a plea of such matter as a partial defense.''

During the trial counsel for the defendants requested the [12]   court to permit physicians present in the courtroom to make a physical examination of the plaintiff in the presence of the jury.   The request was denied.   They afterward requested instructions which would have told the jury, in effect, that the refusal of the plaintiff to submit to the examination at the request of counsel made in open court, together with the circumstances, might be considered by them and given such weight as they might in their discretion deem proper.   It was held in *May* v. *Northern Pac. Ry. Co.*, 32 Mont. 522, 4 Ann. Cas. 605, 70 L. R. A. 111, 81 Pac. 328, that the court could not, in the absence of legislation, compel the plaintiff to submit to a physical examination.   The propriety of the rule announced in that case is conceded by counsel for defendants; but they insist that the request and refusal should have gone to the jury under proper instructions, to be considered by them as competent evidence on the

theory that, inasmuch as the episode had taken place in the presence of the jury, they should be permitted to consider it as evidence which the plaintiff had in his possession but refused to disclose.  In other words, the plaintiff having refused to submit to the examination, which would have resulted in bringing to the knowledge of the jury stronger and more satisfactory evidence of the condition of his eye at the time, the other evidence on that point produced by him should be viewed with distrust. (Rev. Codes, sec. 8028.)   The contention is wholly without merit. The defendants had no right to make the demand.  The plaintiff had a right to refuse to comply with it.  Though the requested instructions would not have told the jury explicitly that they should view with distrust plaintiff's evidence in this behalf, it is entirely clear that counsel could have had no other purpose in making the request than to put themselves in position to argue to the jury that plaintiff's evidence was untrustworthy.  Counsel in this way sought to put the plaintiff at a disadvantage before the jury, notwithstanding they knew that under the decision in *May* v. *Northern Pac. Ry. Co., supra,* their demand was improper.

Counsel devote some considerable space in their brief to an argument in an effort to show that plaintiff was guilty of contributory negligence, or, in any event, assumed the risk of the unsafe condition of the engine.  What has been said above disposes of the contention as to contributory negligence.

It is said that the evidence shows that plaintiff continued to [13]   use the makeshift bolt from November 20, 1915, when the stud bolt was broken, to February 5, 1916, the time of the accident, and that in doing so he did not rely on Hudgin's promise to furnish a new one.  It is sufficient to say in this connection that the condition of the engine was due to the negligence of Hudgin in failing to make proper repairs when it was called to his attention, which was, in fact, done almost immediately after the stud bolt was broken.  In the sense that he permitted this condition to continue, it arose by reason of his negligence.  From this point of view, the defense of assumption of risk was not

available to the defendants.   Section 3 of the statute, *supra,* expressly provides that the injured employee ''shall not be deemed to have assumed any risk incident to his employment when such risk arises by reason of the negligence of his employer or of any person in the service of such employer.''   Assuming, however, [14]   that this provision of the statute does not apply to the facts in this case, still the question whether the plaintiff assumed the risk by remaining in the employment of the company for so long a time was a question to be determined by the jury.

The judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

Associate Justices Holloway, Hurly and Matthews concur.

Mr. Justice Cooper, being absent, takes no part in the foregoing decision.