THOMAS SALISBURY, DEFENDANT IN ERROR, v. THE
ERIE RAILROAD COMPANY, PLAINTIFF IN ERROR.

Submitted March 26, 1901—Decided June 17, 1901.

The railroad company placed a push car in the hands of the foreman of
a gang of men to be used in traveling upon its road for the pur-
pose of burning waste railroad ties. The foreman loaned it to an
Italian to take away some of the ties for his own use. While the
Italian was running it on the railroad track the plaintiff, by his
negligence, was injured while crossing the track. *Held*, that it
was the duty of the foreman to use the push car with reasonable
care to prevent injury to anyone lawfully on the track, and to keep
it under his own supervision, until it was returned to the com-
pany, and that for the performance of that duty to the public the
company was bound; the failure of the foreman to perform it
was the failure of the company.

On error to the Supreme Court.

For the plaintiff in error, *John W. Griggs.*

For the defendant in error, *Joseph H. Lefferts* and *Paul R.
Lefferts.*

The opinion of the court was delivered by

VAN SYCKEL, J.  Thomas Salisbury, the plaintiff below,
while lawfully crossing the railroad of the defendant com-
pany, in November, 1897, at about seven o'clock in the even-
ing, was struck by a push car, which an Italian was pushing
upon and over the railroad track. This suit was brought by
Salisbury against the railroad company to recover damages
for the injury he received by the alleged carelessness of the
Italian in the use of the push car.

It appeared in evidence that George McNamara was fore-
man of a section of the defendant company's railroad. His
duty was to keep his section of the road in good repair and
good order, so that trains could pass over it in safety.

On the day of the accident he was engaged, with a gang

of men, of which the Italian was one, in removing old ties from the track and replacing them with new ones.

The company furnished him the push car to carry himself and his men on the railroad track to the place where the ties were to be removed.

After the old ties were taken out the foreman had the right to give them away, and if he did not do so, he was required to pile them up along the track and burn them.

On the day of the accident, after the day's work was done, he gave some of the ties to the Italian, and, at his request, loaned him the push car to take the ties over the track to his home.

While the Italian was on his way to return to the foreman the push car, after using it for this purpose, the injury to the plaintiff was done.

The evidence showed that the company had instructed the foreman to run the push car with great caution, always looking out for trains, not to run it within twenty minutes before passenger trains were due, and not to permit it to be used unless accompanied by the foreman, nor to run it after dark without special authority from the superintendent of the road. The injury in this case occurred while the Italian was running it after dark. At that time the employment of the Italian by the company was at an end, and he cannot be regarded as the servant of the company.

If a master lends his wagon to his servant to carry the servant's property over an ordinary public highway, no one would seriously contend that, while the servant was engaged in his own business, the master would be liable for any injury which resulted from the negligence of the servant.

It would not be an injury done in the service of the master, and the master would be under no duty to the public to maintain the safety of the highway.

But the railroad company was under a duty to maintain its tracks and the appliances used upon them with reasonable care to protect from injury persons who were lawfully passing over the tracks or who were being transported upon them.

In *Smith* v. *New York, Susquehanna and Western Rail-*

*road Co., 17 Vroom* 7, the company's cars were left on a switch, which inclined towards the main track, the same being secured by the brakes and by a railroad tie under the wheels. The cars got upon the main track and caused the injury to the plaintiff.    Chief Justice Beasley delivered the opinion of the Supreme Court, holding that the company was not irresponsible as a matter of law, even though the cars could not have got on the main track but for the wrongful act of a stranger.

In *Delaware, Lackawanna and Western Railroad Co.* v. *Salmon,* 10 *Vroom* 299, the present Chief Justice, speaking for this court, said that, although the railroad, by its charter, is declared to be a public highway, the company was liable for injuries by fire thrown from the locomotives of another company which the defendant company permitted to be run on the road, its defective condition being known to the defendant's train dispatcher.

The court further said that the track and roadbed were the property of the defendant, and in its possession, and the gist of the action was negligence in the manner in which it was used.    If liable for such injury to abutting property, the company must be liable for due care for the safety of persons lawfully passing over its tracks.

There is, therefore, no analogy between an ordinary public highway and a railroad track, and the liability which arises upon the latter has no relation to the former.

In the case *sub judice* no responsibility of the defendant company can be predicated upon the relation of master and servant between the Italian and the company, as no such relation existed at the time of the alleged negligence.    The judgment against the company must rest exclusively upon the failure of the company to perform a duty which it owed to all persons lawfully upon its track in the exercise of due care for their own safety, which failure was due to the act of its servant and agent McNamara in loaning the push car to the Italian.

The Italian had ceased to be the agent or servant of the company, but the foreman was still its agent and servant.

When the company placed the push car in the hands of the foreman it was the duty of the foreman to use it with reasonable care to prevent injury to anyone lawfully on the tracks, and to keep it under his own supervision until it was returned to the company. For the performance of that duty by the foreman the company was bound, and the failure of the foreman to perform it was the failure of the company. The company cannot claim immunity on the ground that its servant violated the instructions given to him, any more than it could set up in defence that an engineer had violated the express instructions given to him to ring the bell at a public crossing.

The twenty-ninth section of the Railroad law (*Gen. Stat., p.* 2645) provides that the penalty for failing to ring the bell or sound the whistle shall be paid by the corporation owning the road. The obligation to see that the duty is performed is cast upon the owner of the road. The safety of the public demands that the company shall be strictly held to its performance.

If the engineer in charge of a train of cars, after he reaches his destination, should lend his train to a friend to take a run upon the road, could it be questioned that for any injury which resulted from its negligent use the company would be responsible?

The relation of master and servant would not exist between the borrower and the company upon which to base its liability, but the action would rest upon the responsibility of the company for the observance of due care in the use of the train by its engineer.

In *Tuller* v. *Talbot,* 23 *Ill.* 357, the plaintiff was a passenger in defendant's stage coach. The driver of the coach placed the lines in the hands of a passenger, and while the passenger was driving the plaintiff was injured through his negligence. The court held the proprietor of the stage coach liable for the injury.

The passenger could not be regarded as the agent of the proprietor, because the driver was without authority to employ the passenger, or make him the agent.

The recovery rested entirely upon the duty of the master to see that reasonable care and skill were used in driving the coach.

In *Lakin* v. *Oregon Pacific Railroad Co.,* 15 *Oreg.* 220; *S. C.,* 34 *Am. & Eng. Ry. Cas.* 500, the plaintiff was injured, while a passenger on the defendant's railroad, by the negligence of one Blackburn, who was placed upon the engine by Fordyce, an agent of the company, who had no right to employ him.

The court said it made no difference whether the injury resulted from the negligence of Blackburn, or the wrong of Fordyce in placing him on the engine. The obligation was to carry the passenger safely, and if it failed to perform its obligation, in consequence of the act of Fordyce, one of its employes, the company became responsible for the injury.

So in the case now under consideration; the duty rested on the company to see that its servant used the push car with due care, and the foreman could not discharge the company from that responsibility by wrongfully putting the car in the hands of the Italian to run upon the road.

In *Philadelphia and Reading Railroad Co.* v. *Derby,* 14 *How.* 468, Mr. Justice Grier held that the company, by entrusting its servant with a dangerous engine assumed the risk of its careless use, and he cites, with approbation, the case of *Sleath* v. *Wilson,* 9 *Car. & P.* 607, where the servant, having his master's carriage and horses in his possession and control, was directed to take them to a certain place, and instead of doing so, he went to another place on his own business, and while so engaged injured the plaintiff. The master was held liable. In that case Mr. Justice Erskine said:

"It is quite clear that if the servant, without his master's knowledge, takes his carriage out of the carriage-house and commits an injury, the master is not liable, but it is on the ground that the master has not entrusted the servant with it. When the master has entrusted the servant with the control of the carriage, it is no answer that the servant has acted improperly in the management of it.

"In such case the master will be liable on the ground that he has put it in the servant's power to mismanage by entrusting him with it to go on the master's business."

It is a general rule that where an injury is done by the omission of some act of care which the defendant is under a duty to see performed, the fact of the omission to perform it fixes the liability, and the relation between the defendant and the person who has failed in the due care is immaterial.

In *Cuff* v. *Newark and New York Railroad Co.*, 6 *Vroom* 1, 24, Mr. Justice Depue clearly states the rule that railroad companies may become liable for injuries occasioned by neglect of duty resting upon them, independent of the relation of master and servant, and cited cases in support of it.

Where a wrongful act is committed by another, the relation between him and the person who is sought to be made responsible, of course, becomes important.

In this case the relation between the Italian and the defendant company is of no consequence. The question was whether there was an omission on the part of the company to discharge the duty which it owed to the plaintiff to see that reasonable care was observed in the use of the push car on its road.

That question was properly submitted to the jury by the trial judge.

At the close of the plaintiff's testimony the counsel for the company requested the court to direct a verdict for the defendant. The only exception taken was to the refusal of the trial court to grant that request. In that there was no error.

The judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, GARRISON, COLLINS, FORT, ADAMS, VOORHEES. 8.

*For reversal*—GUMMERE, GARRETSON, HENDRICKSON, BOGERT, VREDENBURGH, VROOM. 6.