## LEWIS v. MAMMOTH MINING CO.

No. 1865.   Decided January 20, 1908 (93 Pac. 732).

MASTER AND SERVANT—INJURIES TO SERVANT—VIOLATION OF INSTRUCTIONS—LIABILITY OF MASTER. That an engineer in charge of a donkey engine in a mine had no authority to vacate his post as engineer, or to permit another to operate the engine, and in so doing violated his contract of employment, and that the employee, who was incompetent, attempting to operate the engine, likewise violated his instructions, and did that which he was forbidden to do when he took charge thereof, does not relieve the employer from liability for injury to another employee due to such attempted operation of the engine; the test being not whether an employee was acting in accordance with the instructions given him, but whether he was performing a service in furtherance of the employer's business.

33 Utah—18

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Action by Almira Lewis against the Mammoth Mining Company. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*Edwards, Smith & Price* for appellants.

*Powers & Marioneaux* for respondent.

McCARTY, C. J.

Plaintiff brought this action to recover damages for the death of her son Edward Lewis, alleged to have been caused through the negligence of the defendant while said Lewis was at work for defendant in its Mine at Mammoth, Juab county, Utah.    The complaint alleges in part   as follows: "That on or about the 13th day of October, 1904, while said Edward Lewis was in the employ of said defendant and in pursuance of its directions, engaged at work in a shaft in said mine, about 2,160 feet beneath the surface, said defendant, without notice or warning to said Lewis, and without fault on his part, wrongfully, negligently, and carelessly caused and suffered a bucket to fall down said shaft from a station therein about 160 feet above where said Lewis was at work, and to then and there strike said Lewis with great force." Then follows a description of the injuries inflicted, from which injuries, it is alleged, Lewis died on or about September 22, 1905, at Richfield, Utah.    Defendant in its answer admitted that Lewis was in its employ and at work at the time and place alleged in the complaint; but denied that he was killed through any negligence upon its part.    A trial was had which resulted in a verdict in favor of plaintiff for the sum of $5,000.   From the judgment entered on the verdict, the defendant prosecutes this appeal.

. At the time of the accident described in the complaint, Edward Lewis, the deceased, was at work in the bottom of the shaft in defendant's mine, 2,160 feet below the surface.    A

cage was operated in the shaft between the 300 and 1,900 foot level by machinery located in the 300-foot level. It was the duty of one Forcey to run cars off and on to the cage at the 300-foot level, and sometimes, in the absence of the employee whose duty it was to put the loaded cars on the cage at the lower levels, Forcey would be directed by the superintendent or shift boss to "cage the cars," or "ride the cage," as the work was sometimes called. On the day in question he was at work on the 1,900-foot level, putting cars on the cage and sending them up to the 300-foot level, known as the "tunnel level." The shaft extended downward from the 1,900-foot level about 160 feet, but the cage did not run below the 1,900-foot level. An iron bucket, attached to a cable which was operated by means of a donkey engine situated at the 1,900-foot level, was used in the shaft below said level. Defendant had in its employ one Jesse Meyers, who was a competent engineer, whose duty it was to operate this donkey engine, and by means thereof to raise and lower the bucket up and down the shaft below said level. This he would do upon bell signals from the men at work in the bottom of the shaft. The engineer had no other duties aside from operating the engine. And Forcey's duties on the day in question were, as stated, to "cage" the ore cars at the 1,900-foot level. This was the only work assigned to him by defendant, and his duties did not require him to operate the donkey engine. The testimony given by Forcey shows that he, was not an engineer, and that he did not understand the method of operating an engine. On the day in question Forcey proposed to exchange work with the engineer, who was in charge of, and whose duty it was to operate, the donkey engine mentioned. To this proposition Meyers, the engineer, assented, and at once placed Forcey in charge of the engine. The facts in relation to what then took place are fully set forth by Forcey in his testimony, wherein he says: "I started to lower the bucket down the shaft below the 1,900. Lewis [referring to the deceased] was working down the shaft that is below the 1,900 in the bottom. . . . I had received no signal to lower the bucket. . . . After I started to do it, I got rattled and

let it go, and the bucket went down to the bottom. I don't know whether I put on the brakes or not. . . . It has been a long while, and I kind of got frightened, and I don't remember about it. The bucket went to the bottom. When I started to run the engine, there was a mark there to stop it by, and I didn't know how to stop it I guess. . . . I didn't do anything. I was too scared to do anything. I never lowered a bucket before that time. It was the first time I ever tried." Counsel for appellant, defendant below, in their brief concede that, when Forcey undertook "to run said engine, he lost control of it, and the bucket fell down the shaft at a high rate of speed, striking said Edward Lewis and injuring him." And there is abundant evidence in the record to support the finding of the jury that his death was the result of the injuries received.

The court, among other things, instructed the jury as follows: "(12) Under the facts of this case, and the statutes of Utah [referring to section 1343, Rev St. 1898], neither the engineer who had charge of the engine, who raised and lowered the bucket, nor Forcey, who manipulated the engine at the time of the accident, were fellow servants of the deceased, and, if the deceased was injured by the negligence of either the engineer or Forcey, or the combined negligence of both, the defendant is liable therefor; and, if the deceased died from injuries sustained by reason of the negligence of the engineer or of Forcey, or both combined, and he himself was free from contributory negligence, then your verdict must be for the plaintiff in such sum as will compensate her for such damages as she has proven.

"(13) That the engineer and Forcey in allowing Forcey to manipulate the engine acted contrary to the express orders of the defendant company does not relieve the defendant from liability for the results of any negligence, if any is shown by the evidence of said engineer or Forcey while Forcey was so manipulating the engine."

Counsel for appellant do not challenge the correctness of the first part of the foregoing instructions, wherein the court charged that, under the statutes of this state, the engineer

and Forcey were not fellow servants with the deceased, but they insist that the giving of the balance of the said instructions was error. It is contended that, when Forcey took charge of and proceeded to operate the donkey engine referred to, he acted without authority and outside of the scope of his employment, and that, therefore, appellant cannot be held liable for any damage resulting from the negligent manner in which the engine was operated on the day in question. It may be conceded—in fact, we think the record shows—that Meyers had no authority to vacate his post as engineer, nor to permit some other person to operate the engine, and that, when he placed Forcey in control of the engine on the day in question, he did so in violation of the duties imposed upon him by his contract of employment, and that Forcey likewise violated the instructions of his employer, and did that which he was forbidden to do when he assumed control of the engine and attempted to operate it; but it does not follow necessarily that when Meyers and Forcey thus violated the instructions, and did something which the rules and regulations of their employment forbade, they, or either of them, acted beyond the scope of their employment. The important question is not whether they acted in accordance with the instructions given them by the defendant, but were they at the time of the commission of the alleged negligent acts performing a service for the defendant in furtherance of its business. If they were, then, under all of the authorities, the defendant is responsible for their negligent acts. It was the duty of the engineer, Meyers, to operate the engine, and to raise and lower with care the buckets in the shaft, and, when he placed an incompetent person in charge of the engine, he violated a duty in the line of his employment, but did not act beyond the scope of his employment; that is, he was authorized, in fact it was his duty, to perform the service in which he was engaged, and in the course of which he put Forcey in control of the engine, who, it is conceded, was incompetent to properly operate it. Therefore his negligence in this regard was the negligence of the defendant.

"The master is responsible for the negligent acts or omissions of his servants in the course of their employment, though unauthorized or forbidden by him, and although outside of their 'line of duty,' and without regard to their motives. He cannot limit his responsibility for any servant by employing him only with reference to a single branch of the business." (1 Shear. & Redf. Neg., sec. 146.)

This same doctrine is well illustrated in the case of *Rail-way v. Shields*, 47 Ohio St. 387, 24 N. E. 658, 8 L. R. A. 464, 21 Am. St. Rep. 840, wherein the court says:

"A servant . . . cannot depart from the duty intrusted to him when that duty regards the right of others in respect to the employment of dangerous instruments by the master in the prosecution of his business, without making the master liable for the consequences; for the first step in that direction is a breach of the duty by the master, and his negligence in this regard becomes at once the negligence of the master, otherwise the duty required of the master in respect to the custody of such instruments employed in his business may be shifted from the master to the servant, which cannot be done so as to exonerate the master from the consequences of a neglect of duty."

Likewise in the case of *Barmore v. Vicksburg, S. & P. Ry. Co.*, 85 Miss. 426, 38 South. 210, 70 L. R. A. 627, it is said:

" 'If the master intrusts the custody of dangerous agencies to his servants, the proper custody as well as the use of them becomes a part of the servant's employment by the master, and his negligence in any regard is imputed to the master in an action by one injured thereby. And, where the injury received results from the negligence of the servant in the custody of the instrument, it is immaterial, so far as the liability of the master is concerned, as to what use may have been made of it by the servant.' (*Railway v. Shields*, 47 Ohio St. 387, 24 N. E. 658, 8 L. R. A. 464, 21 Am. St. Rep. 840.) In such cases the duty of the servant is to carefully guard and control such instrument, and a failure in this respect is not a departure from the master's service, but a negligent discharge of that service."

The following authorities illustrate and declare this same doctrine: 20 Am. & Eng. Ency. Law, 163; *Reynolds v. Witt*, 13 S. C. 5, 36 Am. Rep. 678; *Philadelphia, etc., R. R. Co. v. Derby*, 14 How. (U. S.) 468, 14 L. Ed. 502; *Duggins v. Watson*, 15 Ark. 118, 60 Am. Dec. 560; *Lakin v. Railroad Co.*, 15 Or. 220, 15 Pac. 641; *Birmingham W. C. Co. v.*

*Hubbard,* 85 Ala. 179, 4 South. 607, 7 Am. St. Rep. 35; *Erie Ry. Co. v. Salisbury* (N. J.), 50 Atl. 117, 55 L. R. A. 578; *Tex. & Pac. R. R. Co. v. Scoville,* 62 Fed. 730, 10 C. C. A. 479, 27 L. R. A. 179; *Alsever v. Minn. & St. L. R. Co.,* 115 Iowa 338, 88 N. W. 841, 56 L. R. A. 748; *Dimmitt v. Hannibal & St. J. Ry. Co.,* 40 Mo App. 654; *Althorf v. Wolfe,* 22 N. Y. 355; *Quinn v. Power,* 87 N. Y. 535, 41 Am. Rep. 392; Wharton, Negligence, sec. 160.

We find no error in the record. The judgment is therefore affirmed, with costs.

STRAUP and FRICK, JJ., concur.