WEGGE, RESPONDENT, v. GREAT NORTHERN RAILWAY
CO. ET AL., APPELLANTS.

(No. 4,480.)

(Submitted September 23, 1921.   Decided November 28, 1921.)

[203 Pac. 360.]

*Personal Injuries—Master and Servant—Railroads—Scope of
Employment — Conflict in Evidence — Excessive Verdicts —
New Trial.*

Master and Servant—Railroads—Injuries in Course of Employment—Con-
flicting Evidence—Verdict Conclusive.
  1.   The question whether, when plaintiff, a section-hand, was injured
  by a collision while resting in a caboose standing upon the main
  line after the dinner hour and waiting to be transported to work, he
  was or was not acting within the scope of his employment was for
  the jury's determination where the evidence relating thereto was
  not conclusive either way.

Same—Scope of Employment—Conductor Acting as Engineer—Liability
of Master.
  2.   *Held,* that a conductor of a work train was not only acting in
  furtherance of the operations entrusted to him, but also within the
  scope of his authority when, in the temporary absence of the en-
  gineer, he assumed charge of the locomotive and in his endeavor to
  switch a caboose from the main line, where it was a menace to life
  and limb on account of passing trains, to a side-track and in doing
  so caused a collision with the caboose injuring plaintiff.

Witness—Credibility.
  3.   The evidence of a witness, to be credible, must be within reason.

Personal Injuries—Excessive Verdict—New Trial.
  4.   Plaintiff, a section-hand, at the time of the accident was fifty-
  six years of age, earning twenty-two and one-half cents per
  hour.   His own physician declined to state that he was permanently
  injured; when he left the hospital there were no visible signs of in-
  jury upon his body; X-ray plates made of the injured parts showed
  no permanent injury.   At the time of the trial he was able to con-
  duct a substantial restaurant business.   *Held,* that a verdict for
  $10,000 was so excessive as to warrant the granting of a new trial.

*Appeals from District Court, Hill County; W. B. Rhoades,
Judge.*

ACTION by Charles Wegge against the Great Northern Railway
Company and another.   From a judgment for plaintiff and an
order denying them a new trial, defendants appeal.   Reversed.

4.   On excessiveness of damages in actions for personal injuries other
than death, see notes in 16 **Ann. Cas.** 8; **Ann. Cas.** 1913A, 1361; **Ann.
Cas.** 1915D, 488; **Ann. Cas.** 1916C, 916; **L. R. A.** 1915F, 30.

*Mr. I. Parker Veazey, Jr., Mr. W. L. Clift* and *Mr. R. H. Glover,* for Appellant Railway Company, submitted a brief; *Mr. Veazey* argued the cause orally.

The verdict is so excessive as to entitle defendants to a new trial. If the verdict is merely scaled by the court, and the view is taken that defendants are not entitled to a new trial, as a matter of right, we urge that the verdict be radically scaled. ' (*Hall* v. *Northern Pac. Ry. Co.*, 56 Mont. 537, 186 Pac. 340; *Emerson* v. *Butte Electric Ry. Co.*, 46 Mont. 454, 129 Pac. 319; *Previsich* v. *Butte Electric Ry. Co.*, 47 Mont. 170, 131 Pac. 25; *Stewart* v. *Pittsburg etc. Co.*, 42 Mont. 200, 111 Pac. 723.)

The railway company is not liable because plaintiff was not engaged in the scope of his employment. (See *Moyse* v. *Northern Pac. Ry. Co.*, 41 Mont. 272, 108 Pac. 1062; *Glover* v. *Chicago M. & St. P. Ry. Co.*, 54 Mont. 446, 171 Pac. 278.)

Defendant company is not liable for tort of the coservant, because such coservant was not acting in scope of his employment. (5 Labatt on Master & Servant, sec. 1642; *Bequette* v. *St. Louis I. M. & S. Ry. Co.* (1900), 86 Mo. App. 601; *Biederman* v. *Brown*, 49 Ill. App. 483; *Beard* v. *London General Omnibus Co.*, 2 Q. B. (C. A.) 530; *Limpus* v. *London General Omnibus Co.*, 1 Hurl. & C. 526.)

*Mr. A. F. Lamey, Mr. L. V. Beaulieu* and *Mr. H. S. McGinley,* for Appellant Louis S. Mayer, submitted a brief.

Plaintiff was a trespasser. The only duty owed to a trespasser is to abstain from wantonly, recklessly and willfully injuring him. (*Ashworth* v. *Southern R. Co.*, 116 Ga. 635, 59 L. R. A. 592, 43 S. E. 36; *Blanchard* v. *Lake Shore etc. R. Co.*, 126 Ill. 416, 9 Am. St. Rep. 630, 18 N. E. 799; *Jordan* v. *Grand Rapids etc. R. Co.*, 162 Ind. 464, 102 Am. St. Rep. 217, 70 N. E. 524; *Trudell* v. *Grand Trunk R. Co.*, 126 Mich. 73, 53 L. R. A. 271, 85 N. W. 250; *Hern* v. *Southern Pacific Co.*, 29 Utah, 127, 81 Pac. 902.) The negligence must be so gross that

the defendant would have been liable for exemplary damages had death ensued. (*Houston etc. R. Co.* v. *Boozer,* 2 Posey Unrep. Cas. (Tex.) 452.)

In the case of *Snyder* v. *Natchez etc. R. Co.,* 42 La. Ann. 302, 7 South. 582, it was held that where a person, although lawfully upon railroad premises, afterwards intrudes upon cars of the company on which he has no business, he becomes a trespasser; and especially is this the case where such intrusion is forbidden by the railroad company. (See, also, *Chenery* v. *Fitchburg R. Co.,* 160 Mass. 211, 22 L. R. A. 575, 35 N. E. 554; *Norfolk etc. R. Co.* v. *Stegall's Admx.,* 105 Va. 538, 54 S. E. 19; *Jordan* v. *Grand Rapids etc. R. Co.,* 162 Ind. 464, 102 Am. St. Rep. 217, 70 N. E. 524.) It is apparent from the testimony of the plaintiff and his witness that neither the defendant company nor the defendant Mayer knew of the presence of plaintiff in the caboose until after the collision.

*Mr. Victor R. Griggs,* for Respondent, submitted a brief and argued the cause orally.

Nowhere in their brief have appellants attempted to show wherein there was evidenced any passion or prejudice on the part of the jury in arriving at their verdict and this court has said: "The elements of passion and prejudice will not be presumed to have influenced the minds of the jurors to return a verdict based on competent testimony in accordance with instructions and easily to be arrived at by mathematical calculation." (*Yergy* v. *Helena Light & Ry. Co.,* 39 Mont. 213, 18 Ann. Cas. 1201, 102 Pac. 310.)

It has been repeatedly held by this court that the mere fact that the verdict in the opinion of the court is excessive, or that the verdict appears on its face excessive, is not a sufficient ground for judicial interference unless it appears to have been the result of passion or prejudice on the part of the jury. (*Kennon* v. *Gilmer,* 9 Mont. 108, 22 Pac. 448; *Sweeney* v. *City of Butte,* 15 Mont. 274, 39 Pac. 286; *Flaherty* v. *Butte Electric R. Co.,* 42 Mont. 89, 111 Pac. 348; *Lewis* v. *Northern Pac. Ry.*

*Co.*, 36 Mont. 207, 92 Pac. 469; *Yellowstone Park Ry. Co.* v. *Bridger Coal Co.*, 34 Mont. 545, 115 Am. St. Rep. 546, 9 Ann. Cas. 470, 87 Pac. 963; *Neary* v. *Northern Pac. Ry. Co.*, 41 Mont. 480, 110 Pac. 226; *Bourke* v. *Butte Elec. & Power Co.*, 33 Mont. 267, 83 Pac. 470; *Hollenbeck* v. *Stone & Webster Eng. Corp.*, 46 Mont. 559, 129 Pac. 1058; *Kelly* v. *John R. Daily Co.*, 56 Mont. 63, 181 Pac. 326.)

Where the verdict of the jury is based upon competent testimony and may be easily arrived at by mathematical calculation, it will not be disturbed. (*Yergy* v. *Helena Light & Ry. Co.*, 39 Mont. 213, 18 Ann. Cas. 1201, 102 Pac. 310; *Hollenbeck* v. *Stone & Webster Eng. Co.*, *Neary* v. *Northern Pac. Ry. Co.*, *Bourke* v. *Butte Elec. & Power Co.*, *supra*.)

Defendant Mayer was acting within scope of employment. His testimony shows that he was attempting to use the engine for the purpose of doing some switching and even though he had a mania for running the engine, and was not employed for that purpose, at the same time he was using it and running it in the furtherance of the business of the company. (*Purcell* v. *Southern Ry. Co.*, 119 N. C. 728, 26 S. E. 161; *Walker* v. *Gillette*, 59 Kan. 214, 52 Pac. 442; *Chicago etc. Ry. Co.* v. *Lundstrom*, 16 Neb. 254, 49 Am. Rep. 718, 20 N. W. 198.)

The cases cited by appellant, Great Northern Railway Company, are not in point, inasmuch as they involve the negligent acts of ordinary employees and not the negligent acts of an official or vice-principal such as Mayer was.

MR. JUSTICE COOPER delivered the opinion of the court.

This action was brought to recover damages for personal injuries the plaintiff received while resting in a caboose a mile west of Frazer station. The accident occurred between the hours of 12 and 1 o'clock, shortly before the time it was customary for the men to return to the caboose to be carried back to work. The plaintiff was a member of a crew unloading gravel brought in cars from a pit three miles west of the unloading point referred to in the evidence as the "industrial tracks" and forming part of the yards at Frazer. Cars fitted

[61 Mont. 377.]

with bunks for sleeping quarters, and equipped for cooking meals for the men, called "outfit cars," were placed at a distance of about 400 feet from the junction of the "industrial tracks" with the main line. The caboose at the time the plaintiff was injured was standing on the main line distant from the "outfit cars" 600 or 800 feet, and east of the switch leading from the main track to the "industrial tracks" from 400 to 500 feet. About 11:30 on the morning of the accident, the conductor excused the plaintiff to permit him to get relief from a toothache which had been troubling him all the morning. He did not return to work during the forenoon. Soon after the arrival of the men at the "outfit cars" for dinner, the plaintiff left as he states, to be away from the noise—and went into the caboose, where he remained until injured, as he alleges. The crew whose business it was to load the gravel at the pit had gone to Glasgow, and no more unloading was to be done that afternoon.

The case was tried with the aid of a jury, and resulted in a verdict and judgment for the plaintiff. From an order denying a new trial and the judgment both defendants appeal.

Counsels' assignments of error present the following questions: (1) Was the plaintiff at the time he was injured, acting within the course of his employment? (2) Was the conductor, in running the engine, acting within the scope of his authority? And (3) was the verdict excessive?

Upon neither one of the two first questions was the evidence so free of dispute that we may say the verdict of the jury is not conclusive upon the court. The first inquiry presents the question of the plaintiff's right to go into the caboose as he did. If he was there to serve his own comfort and convenience, and not to be ready to be transported back to work, he cannot recover, unless the injury was wantonly or intentionally inflicted upon him. Before we can resolve the question against the plaintiff, we must be able to say, as a matter of law, that the evidence shows him to have then been a mere stranger under license from the company, rather than an employee waiting to

be carried back to his work, or, upon the evidence that it was negligence for him to be in the caboose at that time. We cannot do either without announcing a rule as technical as it is artificial, unless his presence there constituted negligence, and in the face of a danger an ordinarily prudent man would have avoided. Upon the credibility of the witnesses and their faculty in depicting attending conditions, a correct solution of the question largely depends.

The plaintiff testified that it was customary for the men to ride in the caboose; that he was not told by the conductor that there would be no work that afternoon, and did not know that he was not required to report for duty; that he went into the caboose for the purpose of being transported to work after the dinner hour; that it was customary for the men to go to the vicinity of the caboose after dinner, for some to go inside and others to remain outside until the conductor signaled them to get aboard the caboose. On the other hand, the conductor testified that he told the plaintiff there would be no more work unloading that afternoon, and that he did not think they would need him.

Touching the right of the members of the crew to be in the caboose at that time, or at all, the conductor testified as follows: "None of the cable gang had authority to go into the caboose, or had permission to go into the caboose at any time. I don't believe I ever told them to get on the caboose at any time to ride to work even. I have always had trouble with them with reference to getting on the caboose. I always found them in the way in there when we wanted to do any work. We always had to wade through ten or twelve men in the caboose and I got real mad about it and told them I didn't like to see them all crowded around there in that way. I finally induced the majority of the men to keep out of the caboose. I had several of them with their minds made up not to get into that caboose at all."

If the plaintiff entered the caboose on other occasions as he did at this time, and, with other members of the crew, had

been thus conveyed to the place his duty called him, with the knowledge of the conductor, he was injured while within the course of his employment. The jury seemed to have taken this evidence of the conductor to indicate impatience upon his part because so many men were in his way, and not as proof that plaintiff's presence in the caboose was contrary to any custom or rule forbidding it. Can it be that an implied contract ends suddenly and at a fixed moment, while the employee is still surrounded by the conditions and risks of his employment; or that it continues until the employee has ceased to be affected by them? To adopt the former and to reject the latter would rob the rule of its reason altogether.

The testimony for the plaintiff found more favor with the jury than did that produced against him and resulted in a verdict favorable to his contention. Having so determined on evidence that could not be construed conclusively either way, we cannot stamp the proposition as one of law instead of one of fact for the jury. The line of demarcation is not so well defined that the evidence upon the point is open to but one inference. This phase of the present case so nearly resembles *Moyse* v. *Northern Pac. Ry. Co.*, 41 Mont. 272, 108 Pac. 1062, that the law therein declared is to be regarded as settled upon all kindred questions arising in this jurisdiction. After an exhaustive analysis of the doctrine announced in similar decisions, it is held that where the evidence presented is not conclusive either way, the question whether the employee was injured while doing something it was his duty to do, or he had a right to do under his contract of employment, was one of fact for the jury.

Passing to the next question: Was the conductor acting within [2] the scope of his authority when he ran the engine on this occasion? Stating the proposition more specifically, was that an act in furtherance of the operations intrusted to him by the defendant? He testified that, after dinner he, in company with the other members of the train crew, before returning to the gravel-pit, did some switching; that they went back to the

pit, the trip back and forth taking twenty-five or thirty-five minutes. After returning to the pit, "we grabbed hold of the caboose, threw it on to the main line, and shoved the empties back into the pit * * * nearest town, the one where the outfit cars were. We put the train away in there. Then we was going to go back to Frazer to the town. I got on the engine and Mr. Kettler got off to get a drink, and I took charge of the engine. I pulled out of the switch and started backing up and hit the caboose. I was backing in the direction of Frazer—east. * * * The caboose was set out on the main line because we had to get the caboose out of there in order to put the empties in; we always had the caboose with us out of town. We were not going to do any work after we put the train away on this spur-track. At Frazer we were going to have a holiday; we didn't have nothing to do. * * * It slipped my mind that the caboose was there at all."

Whatever may be said of the conductor's purpose in ordering the switching operations, it would have been negligence indefensible from any standpoint, to have left the caboose standing on the main line where it would be a menace to life and limb on account of passing trains. In switching the caboose from the main line, Mayer was acting in furtherance of the company's business. Whether he was acting within the scope of his authority when he mounted the engine and started it is a question somewhat more difficult to answer.

In Shearman & Redfield on Negligence, sixth edition, section 146, it is said: "The master is responsible for the negligent acts or omissions of his servants in the course of their employment, though unauthorized or even forbidden by him, and although outside of their 'line of duty,' and without regard to their motives, he cannot limit his responsibility for any servant by employing him only with reference to a single branch of the business. * * * There is no difference in this respect between a servant who is a general agent and one who is employed for a particular purpose; provided the latter is acting with the seeming consent of the master and within the apparent

scope of his employment. Such a distinction has, however, been sometimes taken. The fact that the servant is employed only for a single purpose may be material in determining whether his negligence or other misconduct happens in the course of his employment; but if it does, the master's liability is exactly the same as if the servant were a general agent.''

Long ago, the supreme court of the United States repudiated subtle refinements in fixing the moment when the relation of employee and employer begins and when it ends. (*Railway Co.* v. *Derby,* 14 How. 468, 14 L. Ed. 502 [see, also, Rose's U. S. Notes]; *Steamboat Co.* v. *Brockett,* 121 U. S. 637, 30 L. Ed. 1049, 7 Sup. Ct. Rep. 1039.) The distinctions involved in the term "scope of authority" are not to be drawn so fine that a particular act may be declared upon as a matter of law, unless the evidence is in such condition that reasonable men will not be likely to differ in its interpretation. If the act "be done in the course of his [the servant's] employment, the master is liable; and it makes no difference that the master did not authorize, or even know of the servant's act or neglect, or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant's employment. See Story on Agency, sec. 452; Smith on Master and Servant, 152." (*Railroad Co.* v. *Derby, supra,* and cases in 27 Am. St. Rep., note on page 226; *Lewis* v. *Mammoth Min. Co.,* 33 Utah, 273, 15 L. R. A. (n. s.) 439, 93 Pac. 732.) See, also, an elaborate and exhaustive opinion of the supreme court of Kansas, *Martin* v. *Atchison, T. & S. F. R. Co.,* 93 Kan. 681, 145 Pac. 849, in which the company is held liable for damages to a brakeman injured while firing the locomotive in obedience to the direction of the conductor. Also, *Rodman* v. *Michigan Cent. Ry. Co.,* 55 Mich. 57, 54 Am. Rep. 348, 20 N. W. 788, where it was held that the conductor was acting rightfully in taking charge of the engine, but (by a divided court) that the suit failed because the plaintiff had assumed the risk of the injury.

The latter question is removed from the case at bar by the provisions of section 1 of Chapter 29 of the Laws of 1911,

declaring the company liable to an employee for injury received by him through the negligence of any officer or other employee engaged in the operation of the railway, and section 3 of the same Act, abolishing the defense of assumed risk in any case where the dangerous condition out of which the injury grew has arisen from the negligence of the employer. The applicability of the statute to the case at bar is not in doubt. Assuming, for the purposes of this case, that the defense of assumed risk would not have been otherwise available to the defendant, there is nothing in the evidence to show that the plaintiff had reason to apprehend this particular act of negligence of the defendant or its agents. At no time during the trial was it claimed that the conductor did not have authority to excuse the plaintiff as he did, or to direct when the work should commence, when it should end, when the train should start, when it should stop and where it should go in the performance of the work. The conductor's *act* in starting the engine was the act of an employee, and not one of superintendence. His *decision* to run the engine himself was within the scope of his authority, if he deemed it necessary or elected to do so in furtherance of the enterprise over which he then had control. By their verdict the jury decided that when he undertook to switch the caboose from the main line to the side-track, it was his aim to advance the work intrusted to him by the defendant. From this it necessarily follows that the jury deemed that to be an act within the scope of his authority. His negligence in this respect must, therefore, stand as the negligence of the company.

The verdict of the jury was for $10,000 damages. Is there [3, 4] enough conflicting evidence in the record upon which the award can find room to stand? When the proof is as we find it here, so inherently weak, and the statement of the plaintiff so extravagant that they appear unreasonable to the average mind, the case should be returned to the court below for further proceedings. What does the record show? The plaintiff's own testimony is that he was fifty-six years of age, his average earn-

ings were $130 per month on a basis of twenty-two and one-half cents per hour, and that he would "sometimes work eighteen, twenty, or twenty-two hours a day." To have earned $130 per month he would have been obliged to work a little less than twenty hours each day during a month of thirty days. It would be an imputation upon human intelligence to assume that a jury of reasonable men, after due deliberation, could believe that, at his age, he could constantly endure a strain so severe. The evidence of a witness, to be credible, must be within reason. Yet the size of the verdict is conclusive evidence that the jury did not take into consideration the fact that his earning capacity would be impaired by advancing age, and that they gave full credit to his statements regarding the pain he suffered, and the severity and permanency of his injuries. He stated that he had lost a few pounds in weight, suffered from pain which walking produced in his hip, the pain forcing him to assume a slightly stooping position, but that by so walking he found relief from the pain. Dr. McKenzie, the physician who attended him in the hospital at Havre, testified that when he left that institution there were no visible signs of injury upon his body. In the whole of the medical testimony upon the trial no witness ventured the opinion that his injuries were incurable or permanent. His own physician, Dr. Joyce, who came from Jamesville, Minnesota, to testify in his behalf, would not do so and his interest inclined him most favorably to the plaintiff's cause. He testified that he had attended him two years prior to the trial for a fractured rib, after which he was able to work and showed no after effect; that he also attended him after the occurrence of the accident in question here and treated him for the injuries complained of; that he had X-ray plates made of the injured parts which he did not produce upon the trial, but admitted that they showed no permanent injury; that he examined his urine, stating that he did not "find anything out of the way with that—nothing to indicate any of the vital organs out of order. Placing myself as a neutral between the parties, and bearing in mind the responsibilities of a doctor, I wouldn't feel that I can state

whether or not Mr. Wegge's injuries are permanent. I could not state positively.''

When the evidence is all considered in connection with the undisputed fact that the plaintiff was able to get around and conduct a substantial restaurant business, it is difficult to avoid the conviction that the award of damages was not founded altogether upon the evidence in the case; and, when thrown into the scale with the undisputed fact that at the time of the trial he was managing and operating this business with little, if any, detriment to his activities on account of his injuries, a verdict so large fails to commend itself to the judicial mind. Upon this branch of the case, the law found in the opinions of Chief Justice Brantly written for this court in *Hall* v. *Northern Pac. Ry. Co.*, 56 Mont. 537, 547, 186 Pac. 340, and *Cornell* v. *Great Northern Ry. Co.*, 57 Mont. 177, 187 Pac. 902, is controlling. (See, also, *Conway* v. *Monidah Trust*, 51 Mont. 113, 149 Pac. 711.) Reiteration now is wholly unnecessary. From the evidence as a whole, the conclusion that he suffered some injury and experienced some pain was justified. But the loose and unconsidered statements of the plaintiff under oath relative to the number of hours he worked furnish ground enough, it seems to us, for the inference that the verdict was not reached by a fair analysis of the evidence and an effort to adjust the rights of the party without the unbalancing effect of sympathy for one party and prejudice against the other.

On this ground we are of opinion that the judgment should be reversed and a new trial awarded. So ordered.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS and HOLLOWAY concur.

MR. JUSTICE GALEN, not having heard the case presented nor participated in the deliberations of the court with respect to this appeal, takes no part in this opinion.

Rehearing denied January 7, 1922.